☑ Original ☐ Dupli...

CLERK'S OFFICE
A TRUE COPY
Dec 13, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.   23-M-519 (SCD) |
| a. a black iPhone in a clear case , serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 1"); b. a red iPhone in a clear case serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 2"); and c. a blue iPhone in a black "Otter box" case, serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 3"). | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      12-27-23      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Honorable Stephen C. Dries      .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     12-13-23. 9:20 am          *Stephen C. Dries*
                                                                    *Judge's signature*

City and state:     Milwaukee, WI          Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                    *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is further described as follows:

a. a black iPhone in a clear case , serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 1");

b. a red iPhone in a clear case serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 2"); and

c. a blue iPhone in a black "Otter box" case, serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 3").

The three devices are currently located in law enforcement custody at 1000 55th Street in Kenosha, Wisconsin 53143.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) (possession of a firearm by a prohibited person), 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime), and 21 U.S.C. §§ 841(a)(1) and 846 (possessing with intent to distribute and conspiracy to distribute a controlled substance), and involve Saul RIUZ, and/or any other known or unknown co-conspirators, including:

   a.  lists of narcotics customers and related identifying information;

   b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c.  any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information);

   d.  any information related to RUIZ's purchase, receipt, or possession of firearms since the time he became prohibited by law from possessing firearms;

   e.  any information recording RUIZ's schedule or travel to the present;

   f.  all bank records, checks, credit card bills, account information, and other financial records;

   g.  photos, videos, IP addresses, contact information, contact lists;

   h.  text messages, social media messages and content, SMS messages, iMessage data, relating to the sale and/or trade of narcotics and firearms;

   i.  electronic mail to include the content of the emails, and associated email addresses, relating to the sale and/or trade of narcotics and firearms;

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

CLERK'S OFFICE
A TRUE COPY
Dec 13, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

a. a black iPhone in a clear case , serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 1"); b. a red iPhone in a clear case serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 2"); and c. a blue iPhone in a black "Otter box" case, serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 3").

)
)
)
)
)
)
)

Case No. 23-M-519 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ Easten _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1); | Possession of a Firearm by a Prohibited Person; Possession of a Firearm in |
| 18 U.S.C. § 924(c); | furtherance of a Drug Trafficking Crime: Possessing with Intent to Distribute and |
| 21 U.S.C. §§ 841(a)(1) and 84 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew Mason, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 12-13-23

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Matthew Mason, being first duly sworn, hereby depose and state as follows:

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device, described in Attachment A—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since 2015. Before that time, I was a police officer with the Calumet City Police Department from 2003 until 2015. In my capacity as an ATF special agent, I have investigated various federal crimes, including violations of Title 18, United States Code, Section 922, and Title 21, United States Code, Sections 5861(d) and 5861(f). I am also working with various other local, state, and federal agencies as part of Operation Relentless Pursuit, a federal initiative intended to combat violent crime in seven cities, including Milwaukee.

3.     During my career in law enforcement, I have investigated violations of federal narcotics laws and related violations, including federal firearms offenses. Based on my training, experience, and participation in firearms and drug trafficking investigations, I am familiar with the appearance and street names of various drugs, including marijuana, methamphetamine, heroin, cocaine, cocaine base (crack cocaine),

and ecstasy. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.

4.      I am aware, based on my training and experience, that cellular phones can be used to store information, including text messages, multimedia messages, photographs, video, histories of incoming and outgoing calls, contact/address book information, and other data. I am further aware, based on training and experience, that subjects involved in crimes with other subjects often use their cell phones to coordinate their criminal activities. Specifically, evidence of narcotics distribution and illegal firearm purchase(s), possession, and/or sales is commonly found on the dealer's and purchaser's cell phone(s). I am aware that narcotics and firearms traffickers often take, or cause to be taken, photographs, videos, and other visual depictions of themselves, their associates, firearms straw purchasers, their property, money, and their narcotics on their cell phones. Narcotics and firearms traffickers also typically keep and maintain these photographs, videos, and other visual depictions in cell phones located on their person or in areas where they exercise dominion and control. I also know that cell phone users, including narcotics and firearms traffickers, use their cell phones to post and view social media accounts like Facebook, as well as use other apps such as ones that track location(s), provide directions, and enable communication with others.

5.      This affidavit is made in support of an application for a warrant to search a cell phone, further described below and in Attachment A. The search will be for evidence

2

and instrumentalities associated with 18 U.S.C. § 922(g)(1) (possession of a firearm by a prohibited person), 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime), and 21 U.S.C. §§ 841(a)(1) and 846 (possessing with intent to distribute and conspiracy to distribute a controlled substance), involving Saul RUIZ (DOB: XX/XX/1997), and any other known or unknown co-conspirators.

6. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7. The property to be searched is further described as follows:

   a. a black iPhone in a clear case , serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 1");

   b. a red iPhone in a clear case serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 2"); and

   c. a blue iPhone in a black "Otter box" case, serial number unknown, including any SD cards or other removable memory/storage devices inside

the iPhone (hereinafter "Device 3").
Collectively referred to as "The Devices." The Devices are currently in law enforcement custody at the Kenosha Joint Services Evidence Bureau.

8.    The warrant for which I am applying would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

9.    Saul RUIZ is a convicted felon, having been convicted of Unlawful Use of Firearm by a Felon in Illinois. RUIZ's conviction in that case remains of record and unreversed. A warrant was issued for RUIZ in that case for Parole Violations. Additionally, Ruiz has an open felony case in Lake County, Illinois, and a warrant issued in that case for his arrest 09/13/2023 for charges of Burglary, Home Invasion, Criminal Trespass, and Battery.

10.    On November 1, 2023, members of the United States Marshals Service (USMS) located and arrested RUIZ on the active felony arrest warrants.

11.    Specifically, on November 1, 2023, USMS and officers with Kenosha Police Department (KPD) arrived at 2420 52nd St., Kenosha, WI to attempt to arrest RUIZ. Investigators observed RUIZ's vehicle parked on the west side of the target building during their approach to the residence. Deputy Blauser began knocking on the target address to illicit a response. After a few series of knocks, a female voice could be

4

heard asking "Who is it?" At this point, Deputy Blauser told the female that it was the police and she needed to open the door. After a short delay, a female, later identified as: G.V. opened the door.

12.     Deputy Blauser told G.V. that they were there for Saul RUIZ, and she needed to go get him. G.V. paused and did not say anything so at this point G.V. was instructed to exit the apartment and to sit on the stairs out of the way. As Deputy Blauser was escorting her down to the steps, G.V. confirmed that RUIZ was inside along with her daughter. The GLRFTF entered the apartment and began clearing the immediate kitchen area calling out for RUIZ to surrender. At this point, RUIZ presented himself from the northwest bedroom and surrendered without complication. The GLRFTF conducted a protective sweep of the small two-bedroom apartment for any other persons that could pose a threat to law enforcement. G.V.'s daughter was located and was escorted out to G.V. at the bottom of the stairway. During the protective sweep, a digital scale was observed in the kitchen and a small plastic baggie of suspected marijuana was observed on the dresser in the northwest bedroom by Supervisory Deputy Keller.

13.     RUIZ was placed into a KPD squad and transported to the Kenosha County Jail. KPD requested consent to search the northwest bedroom of the residence from Ventura due to the suspected marijuana being located. Ventura provided written consent to search which was documented on a USMS Form USM-310. The GLRFTF and KPD conducted a consent search of the northwest bedroom and located the following items:

5

a. Glass Mason Jar with 471.4 grams of Marijuana. Substance field-tested positive for THC using NIK E test kit.

b. Plastic Vacuum bag of 68.9 grams of Marijuana labeled "Jealousy."

c. Plastic Vacuum bag of 69.8 grams of Marijuana labeled "Chinera."

d. Small plastic baggie of 2.8 grams of Marijuana.

e. Small plastic baggie of 4.8 grams of Marijuana.

f. Large plastic baggie of 29.8 grams of white, hard, rock-like substance. Substance field-tested positive for the presence of Cocaine using NIK G test kit.

g. Plastic container that contained four smaller baggies of the following substances:

    i. Blue M30 round pills-90 ct.

    ii. Plastic baggie with 15.2 grams of a brown hard rock-like substance, which field-tested positive for the presence of Fentanyl using a Mobile Detect test kit.

h. Plastic baggie of 24.0 grams of a white, hard rock-like substance, which field-tested positive for the presence of Cocaine using NIK G test kit.

i. Plastic baggie with 19.4 grams of a soft, white powdery substance, which field-tested positive for the presence of Cocaine using NIK G test kit.

j.  Plastic baggies with Blue M30 round pills-100 ct-Substance tested negative for Fentanyl.

k.  Plastic baggie with Blue M30 round pills-24 ct.

l.  Prescription bottle filled with white oval pills labeled M367-100 ct.

m.  Plastic baggie with white oval pills labeled M367-58 ct.

n.  Prescription bottle containing the following different colored pills:

    i.  Round Peach colored pills labeled "777"-12 ct.-Docusate Sodium

    ii.  Oval Peach colored pills labeled "e" over "SOY" and "1|5"-15mg- 5 ct.-Amphetamine  and Dextroamphetamine.

    iii.  Round Peach colored pills labeled "e" over "401"-20mg-43 ct.-Amphetamine and Dextroamphetmaine.

    iv.  Oval Blue colored pills labeled "B" over "972"-10mg-14 ct.-Amphetamine and Dextroamphetamine. (Source used to identify the seized pills was Drugs.com).

o.  Digital scale recovered from bedroom dresser.

p.  Digital scale recovered from top of microwave in kitchen.

q.  Black Springfield armory XD 40 pistol (serial number XD331839).

14.  Based on my training and experience, the weight and variety of drugs recovered from the residence, in combination with the presence of digital scales, is indicative of distribution, as opposed to possession for personal use.

7

15.     I also know through my training and experience that the concurrent possession of both firearms and narcotics could be indicative of illegal narcotics trafficking. Narcotics traffickers often carry firearms with them to protect themselves, their drugs, and their trafficking proceeds.

16.     Law enforcement also recovered 3 iPhone/cellular phones (the Subject Devices) from the residence.

17.     I know through my training and experience that convicted felons, unable to obtain firearms through legal channels, often utilize cellular devices to contact individuals who are not prohibited from possessing firearms for the purpose of having the non-prohibited individual obtain a firearm for the prohibited individual (straw purchasing). This is done in an effort to conceal the true identity of the intended recipient. I also know through my training and experience that individuals engaged in the distribution of narcotics habitually use cellular devices to contact customers and sources of supply to sell and obtain narcotics.

18.     I am aware, from my training and experience, that cell phones and other electronic communication devices are often used by those involved in illegal activities to store information including text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, videos, and other data related to their criminal activities. Similarly, I am aware that many of those who use cell phones often will maintain a list of their contacts and their associates' names,

phone numbers, and other identifying information, as well as communications with those people. I am further aware that cell phones frequently contain SD cards or other removable memory/storage devices upon which the data and information described above may be stored. I am further aware that many cell phones capture or otherwise store global positioning system ("GPS") location tracking/logging files, may provide additional evidence as to the target(s) travels, and may provide evidence as to the location where the alleged illegal actions occurred.

19.     The information sought from the Devices, described more fully in Attachment B, is relevant to the investigation of Ruiz as it will allow law enforcement to identify potential sources and/or traffickers involved in either firearms or narcotics trafficking, assist in the identification of  customers, and identify other potential co-conspirators.

20.     The Devices are currently in storage at the Kenosha Joint Services Evidence Bureau located at 1000 55th Street, in Kenosha, Wisconsin 53143.  Through my training and experience, I know that the manner in which the Devices have been stored ensures their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of law enforcement.

## TECHNICAL TERMS

21.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a

computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning

System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and

presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

24.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

14

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I am applying would permit the examination of the

Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>CONCLUSION</u>

27. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

The property to be searched is further described as follows:

a. a black iPhone in a clear case , serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 1");

b. a red iPhone in a clear case serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 2"); and

c. a blue iPhone in a black "Otter box" case, serial number unknown, including any SD cards or other removable memory/storage devices inside the iPhone (hereinafter "Device 3").

The three devices are currently located in law enforcement custody at 1000 55th Street in Kenosha, Wisconsin 53143.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) (possession of a firearm by a prohibited person), 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime), and 21 U.S.C. §§ 841(a)(1) and 846 (possessing with intent to distribute and conspiracy to distribute a controlled substance), and involve Saul RIUZ, and/or any other known or unknown co-conspirators, including:

    a.   lists of narcotics customers and related identifying information;

    b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.   any information related to sources of drugs or firearms (including names, addresses, phone numbers, or any other identifying information);

    d.   any information related to RUIZ's purchase, receipt, or possession of firearms since the time he became prohibited by law from possessing firearms;

    e.   any information recording RUIZ's schedule or travel to the present;

    f.   all bank records, checks, credit card bills, account information, and other financial records;

    g.   photos, videos, IP addresses, contact information, contact lists;

    h.   text messages, social media messages and content, SMS messages, iMessage data, relating to the sale and/or trade of narcotics and firearms;

    i.   electronic mail to include the content of the emails, and associated email addresses, relating to the sale and/or trade of narcotics and firearms;

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.